United States District Court
Southern District of Texas
**ENTERED**
March 30, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SENECA JONES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-01282 |
| | § | |
| TUBAL-CAIN HYDRAULIC SOLUTIONS, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss (Doc. 24), as well as Plaintiff's Response (Doc. 27) and Defendants' Reply (Doc. 28). Upon review and consideration of the Motion, Response, Reply, relevant legal authority, and for the reasons explained below, the Court finds that Defendants' Motion should be denied.

**I. Background**

Plaintiff Seneca Jones, who is African-American, worked as a hydraulic technician for Tubal-Cain Hydraulic Solutions ("Defendant TCHS") beginning on February 6, 2012. Doc. 24 at 8. Plaintiff alleges that Defendants discriminated against him because of his race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5, and 42 U.S.C. §1981. Doc. 27 at 2. Plaintiff asserts that during his employment he was subjected to discriminatory and racially motivated comments and threatening conduct, and harassed by management and co-workers on a regular basis. *Id.*

Plaintiff filed a discrimination charge with the EEOC on July 17, 2012, naming Defendant TCHS as respondent. Doc. 24 at 8. Plaintiff amended his charge on August 22, 2013,

and received his right-to-sue letter on February 19, 2016. Plaintiff then filed suit on May 6, 2016. *Id.* at 8–9.

Plaintiff sues nine defendants: Defendant TCHS, Tubal-Cain Industries, Inc.; Tubal-Cain Holdings, Inc.; Tubal-Cain Marine Services, Inc.; Tubal-Cain Industrial Services, Inc.; Tubal-Cain Gas Free Services, Inc.; Tubal-Cain Rentals, Inc.; Tubal-Cain Marine Services-Devall Fleet, Inc.; and Tubal-Cain Gas Free Services-Devall Fleet, Inc. (all Defendants except Defendant TCHS are referred to as the "Non-TCHS Defendants"). Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Id.* at 1.

In their Motion to Dismiss, Defendants assert that, under Fed. R. Civ. P. 12(b)(1), the Non-TCHS Defendants are entitled to dismissal because: (1) Plaintiff has not exhausted his administrative remedies as to these Defendants because they were not named as respondents in Plaintiff's Charge of Discrimination or Amended Charge of Discrimination, and (2) Plaintiff did not timely file his Amended Charge of Discrimination. *Id.* at 10–15. Defendants further assert that, under Fed. R. Civ. P. 12(b)(6), Defendants are not subject to liability on two grounds: (1) Plaintiff did not plead sufficient facts to show that the Non-TCHS Defendants were joint employers or an integrated enterprise with Defendant TCHS, and (2) as to all Defendants, Plaintiff's claims under Section 1981 are barred by the statute of limitations. *Id.* at 10–16.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "Courts may dismiss for lack of subject matter

jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g.*, *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject-matter jurisdiction is facial. *Id.* If, however, defendant supports its motion with affidavits, testimony, or other evidentiary materials, then the attack is "factual," and the burden shifts to the plaintiff to prove subject-matter jurisdiction. *Id.* When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997). *See also Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). "When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Walsh v. Aries Freight Sys., L.P.*, 2007 WL 3001650, at *1 (S.D. Tex. Oct. 12, 2007). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. *Id.* Accordingly, the court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a

factual challenge to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *Id. See also Garcia*, 104 F.3d at 1261.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotations omitted). A plaintiff must allege sufficient facts to state a claim that is "plausible" on its face. *Id.* at 569. A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). However, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Therefore, the complaint must be liberally construed in favor of the plaintiff, all reasonable inferences are to be drawn in favor of the plaintiff's claims, and all factual allegations pleaded in the complaint must be taken as true. *Overton v. JMPC Chase Bank*, 2010 WL 1141417 (S.D. Tex. March 20, 2010) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). It is the court's responsibility to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Id.* However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003). "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)). Further, if a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under Rule 12(b)(1), without reaching the question of failure to state a claim under Rule 12(b)(6)." *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 308 (5th Cir. 2011) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This approach "prevents [a] court[] without jurisdiction 'from prematurely dismissing a case with prejudice.'" *Id.* (quoting *Ramming*, 281 F.3d at 161).

### III. Discussion

#### A. Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction

##### *1. Failure to Name the Non-TCHS Defendants in EEOC Charge*

Because Plaintiff failed to name the Non-TCHS Defendants in his EEOC charge, the dispositive question is whether the Non-TCHS Defendants share an identity of interest with Defendant TCHS. Plaintiff argues in his response before this Court that the Non-TCHS Defendants, through "common management, ownership and financial control and operat[ion] as an integrated enterprise," have a "sufficient identity-of-interest" with Defendant TCHS to show jurisdiction. Doc. 27 at 13.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1995) (overruled on other grounds). "The primary purpose of an EEOC charge is to provide notice of the charges to the respondent and to activate the voluntary compliance and conciliation functions of the EEOC." *Ajaz v. Continental Airlines*, 156 F.R.D. 145, 147 (S.D. Tex. 1994) (citing *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1122 (5th Cir. 1981), *vacated on other grounds*, 102 S. Ct. 2028 (1982)). Accordingly, "the scope of a Title VII suit extends as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Ajaz*, 156 F.R.D. at 147 (citation omitted). "The reasonable limits of the investigation potentially triggered by an EEOC charge define not only the substantive limits of a subsequent Title VII action, but also the parties potentially liable for any violation found." *Id.* at 147 (citing *Terrell*, 644 F.2d at 1123). Furthermore, "only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII . . . [but] if it was within the foreseeable scope of the EEOC investigation, an unnamed party could be added as a defendant." *Henry v. Parkwest Staffing Servs., Inc.*, 2012 WL 950213, *4 (S.D. Tex. March 20, 2012) (citing *Terrell*, 644 F.2d at 1122). "Courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

"The general rule is that a party must be properly named in an EEOC charge to be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge." *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988) (citing *Romain v. Kurek*,

836 F.2d 241, 245 (6th Cir. 1987)). Courts use two tests for determining whether a party shares an identity of interest with another party so as to justify a failure to name the party on the EEOC charge. *Walsh*, 2007 WL 3001650, at *4. One test looks to whether there is an "identity of interest where the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Steward v. Aries Freight Sys., L.P.*, No. 07-1651, 2007 WL 3001660, at *4 (S.D. Tex. Oct. 12, 2007). The second test looks at the "relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur." *Id.*

In looking at the relationship, the court examines whether: (1) the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* Under either test, "[t]he 'identity of interest' exception acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly [the exception] prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Id.*

In this case, the present record is insufficiently developed to allow the court adequately to apply the applicable legal tests. The record does not permit the Court to determine, for example, "whether the role of the unnamed part[ies] could through reasonable effort by the complainant be

ascertained at the time of the filing of the EEOC complaint." *Steward*, 2007 WL 3001660, at *4. Additionally, the record does not present sufficient information to determine the similarity of interests between the Defendants, whether there was actual prejudice to the unnamed Non-TCHS Defendants, or if the unnamed Non-TCHS Defendants represented to Plaintiff that their relationship was to be conducted through Defendant TCHS. Accordingly, "[i]n the context of this motion to dismiss, the Court lacks sufficient information to conclude as a matter of law that an identity of interest is lacking." *Walsh*, 2007 WL 3001650, at *4. *See also Steward*, 2007 WL 3001660, at *4 ("At the very least, this Court should not dismiss the case based on a lack of identity of interest before the record is fully developed and all of the [identity of interest] factors can be equitably weighed.") Under Rule 12, the court must deny the request to dismiss the Non-TCHS Defendants for Plaintiff's failure to list them in his EEOC charges.

### 2. Untimely Filing of EEOC Charge

Plaintiff filed a timely charge on July 17, 2012, but that charge alleged only discrimination, harassment, and hostile work environment on account of his race. On August 22, 2013, after the expiration of the 300-day period, Plaintiff amended his charge to include his allegation that he was denied out-of-town jobs on the same basis of racial animus. Plaintiff contends that his amendment is sufficiently related to the subject matter of his original charge to "relate back" to the date of his original charge. Doc. 27 at 13. Plaintiff argues that his amendment did not add a new legal theory, but merely provided "[an]other example[] of racially discriminatory treatment…grow[ing] out of and relat[ing] to" his original claim of race discrimination. *Id.* at 14. Furthermore, Plaintiff contends that Defendants were "given the opportunity to respond and did respond to [his] amendment during the EEOC investigation." *Id*.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor*, 296 F.3d 376, 378–79 (5th Cir. 2002) (citing *Dao*, 96 F.3d at 788–89. Exhaustion occurs, in part, when the plaintiff files a timely charge with the EEOC. *Id.* Pursuant to 42 U.S.C. § 2000e-5(e), an EEOC charge must be filed within 300 days after the alleged unlawful employment practice. The period begins running once the plaintiff knows or should have known of the unlawful employment action. *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000). *See also Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (applying the EEOC filing requirement in the ADEA context).

"[I]n a Title VII lawsuit the Fifth Circuit has limited the trial court's scope of inquiry to 'those grounds of a Title VII complaint that were raised in the administrative process.'" *McCray v. DPC Indus. Inc.*, 942 F. Supp. 288, 294 (E.D. Tex. 1996) (citing *Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 755 (5th Cir. 1989)). Generally, each charge of discrimination is separate and distinct. *Lewis v. Kroger Co.*, 901 F. Supp. 1218, 1224 (S.D. Tex. 1995). EEOC regulations allow a claimant to amend a charge of discrimination to "cure technical defects or omissions" or to "clarify and amplify" the initial allegations. 29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.* Amendments that raise a new legal theory do not "relate back" to an original charge of discrimination. *Manning v. Chevron Chem. Co.,* LLC, 332 F.3d 874, 877–78 (5th Cir. 2003).

The Court concludes that Plaintiff's amended charge is sufficiently related to the subject matter of his original charge to relate back. Unlike the plaintiffs in the cases cited by Defendants, Plaintiff Jones's amended allegations did not necessitate the marking of an additional box

indicating an additional type of discrimination being alleged on the charge form. On his original charge form, Plaintiff marked the box to indicate that he had been discriminated against on the basis of his race. In the space provided to explain the "particulars" of the alleged discrimination, Plaintiff specified that he was "discriminated against because of [his] race," "subjected to racial harassment," and "worked in a hostile work environment." Doc. 24-2 at 4. Plaintiff recounted being subjected to "racial jokes," derogatory racial remarks, and name calling, as well as discovering the tires of his vehicle slashed and finding a threatening drawing of which he was the subject. Doc. 1 at 4–6. In his amended charge, Plaintiff again only made a mark to indicate that he had been discriminated against on the basis of race, and amended his Complaint to supply an additional example of the race discrimination previously alleged in his original claim. *See* Doc. 24-2 at 2–5. Plaintiff's amended charge did not add any new legal theory, but simply alleged an additional act that constituted an unlawful employment practice related to the subject matter of the original claim, thereby merely amplifying the initial allegations. Accordingly, Defendants' Motion to Dismiss the claims related to Plaintiff's amended charge is denied.

**B. Defendants' Motion to Dismiss for Failure to State a Claim**

*1. Defendants' Liability as a Joint Employer or Integrated Enterprise*

The Non-TCHS Defendants seek dismissal of Plaintiff's claims under Title VII and 42 U.S.C. § 1981 on the grounds that such claims are only properly asserted against an "employer," and the Non-TCHS Defendants were not Plaintiff's "employer." *Id.* at 8. Rather, the Non-TCHS Defendants contend that Plaintiff's allegations about discrimination were all directed toward TCHS employees. *Id.* at 10. The Non-TCHS Defendants further argue that Plaintiff does not allege that any employee of a Non-TCHS Defendant made any personnel decisions for TCHS, including decisions affecting Plaintiff, and the allegations made by Plaintiff do not suggest an

"atypical relationship" that renders any Non-TCHS Defendant liable as a joint employer or integrated enterprise. *Id.* at 11–12. Nor do the allegations made by Plaintiff suggest an "atypical relationship" that renders any Non-TCHS Defendant liable as a joint employer or integrated enterprise. *Id*. The Non-TCHS Defendants urge that Plaintiff does not, and cannot, identify a parent company of TCHS, "much less identify any of the [Non-TCHS Defendants] who exercised control over hiring and firing of TCHS employees." *Id.* at 12. Thus, according to the Non-TCHA Defendants, Plaintiff fails to allege common management or ownership. *Id.* Moreover, the Non-TCHS Defendants contend that many of the Non-TCHS Defendants joined in this suit did not exist during Plaintiff's employment with TCHS, while others never had actual operations; therefore, Plaintiff's claims against these entities are completely baseless. *Id.* at 12 n.3. Finally, the Non-TCHS Defendants allege that TCHS was the entity that made the final decisions regarding employment matters related to Plaintiff, and, as a result, there can be no liability in this matter against the Non-TCHS Defendants under Title VII or 42 U.S.C. § 1981. *Id.*

A two-step process is required to determine whether a defendant is an "employer" under Title VII. "First, the defendant must fall within the statutory definition. Second, there must be an employment relationship between the plaintiff and the defendant." *Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993). Title VII defines "employer" as "a person . . . who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year [and] any agent of such a person." *Id*. The Fifth Circuit has held the term "employer" as used in Title VII of the Civil Rights Act was meant to be liberally construed. *Trevino v. Celanese Corp.*, 706 F.2d 397, 403 (5th Cir. 1983). "Title VII's scope is not necessarily limited to direct or titular employees. Superficially distinct entities may

be exposed to Title VII liability when they and the direct employer comprise a single, 'integrated enterprise.'" *Lavergne v. HCA Inc.*, 452 F. Supp. 2d 682, 689 (E.D. Tex. 2006) (citing *Trevino*, 706 F.2d at 403–04). To determine when an integrated enterprise exists, courts consider four factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986); *Trevino*, 701 F.2d at 404. Of these factors, the Fifth Circuit has placed the "highest importance" on the second, which it has narrowed to an inquiry of "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Chaiffetz*, 798 F.2d at 735. *See also Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002).

In contrast to Title VII, 42 U.S.C. § 1981 does not use any minimum number of employees to define "employer." The statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T[he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In *Johnson v. Crown Enterprises, Inc.*, the Fifth Circuit adopted the Title VII *Trevino* four-factor test for § 1981 claims. 398 F.3d 339 (5th Cir. 2005).

To determine whether an employment relationship exists between the defendant and the plaintiff, the Fifth Circuit applies a hybrid test that combines the elements of the economic-realities and common-law-control tests. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 505 (5th Cir. 1994) (citing *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985)). *See also Deal*, 5 F.3d at 118–19; *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990). Under this

hybrid test, courts focus on whether the defendant had the right to control the means and manner of the plaintiff's work in light of the economic realities of their relationship, such as whether the defendant paid plaintiff's salary, withheld taxes, provided benefits, and set the terms and conditions of the plaintiff's employment. *Fields*, 906 F.2d at 1019 (citing *Mares*, 777 F.2d at 1068).

Although the Non-TCHS Defendants contend they and Defendant TCHS do not constitute an integrated enterprise, there is conflicting evidence in the record on this question. In his Complaint, Plaintiff alleges that he was ostensibly hired as an employee of Defendant TCHS, but he performed work for the Non-TCHS Defendants at their respective locations and under their direction. Doc. 1 at 4. Further, Plaintiff alleges the Defendants "share email, information technology and web services, benefits and human resource functions." *Id.* Additionally, according to Plaintiff, "Defendants' parent entities share[] and exercise[] control over subsidiary entities . . . including setting employment policies [and] controlling litigation of subsidiary entities." *Id*.

While this Court cannot conclude that Non-TCHS Defendants and TCHS constitute a single employer for purposes of this action, the facts do not clearly indicate that Plaintiff cannot under any discernable circumstance prove single employer status. Accordingly, at this stage of litigation, the Court finds that it would be premature to dismiss any of the Non-TCHS Defendants. Additional discovery on this issue, specifically on Defendants' relationships with one another, is necessary to determine if the Non-TCHS Defendants are "employers" under § 1981 and Title VII. Defendants' Motion is, therefore, denied.

### 2. Section 1981 Statute of Limitations

Defendants argue that Plaintiffs' § 1981 hostile-work-environment and constructive-

discharge claims based on conduct that occurred prior to May 6, 2012, are barred by the statute of limitations because Plaintiff filed this suit on May 6, 2016. Doc. 24 at 16.

Like many federal statutes, 42 U.S.C. § 1981 does not contain a statute of limitations. However, Congress enacted a catchall four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. 28 U.S.C. § 1658. *See also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). Therefore, claims under the 1991 revisions to § 1981 have a four-year limitations period. *Jones*, 541 U.S. at 371. The 1991 revisions allow a plaintiff to sue for conduct, such as harassment or termination that occurs after contract formation. *Id.* at 383; *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005).

The parties agree that a § 1981 claim must be brought not later than four years after the cause of action accrues. Their dispute instead concerns the date on which Plaintiff's claims against the Defendants originated. The determination of that date is a question of federal law. *See Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983) ("[F]ederal law determines when a civil rights action accrues and, therefore, when the statute of limitations begins to run."). "The limitations period for [§] 1981 . . . employment discrimination cases commences when the plaintiff knows or reasonably should know that the [challenged] discriminatory act has occurred." *McWilliams v. Escambia Cnty. Sch. Bd.*, 658 F.2d 326, 330 (5th Cir. 1981).

Hostile-work-environment claims are different in kind from discrete acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103, 122 S. Ct. 2061 (2002). Because their very nature involves repeated conduct, the "unlawful employment practice" cannot be said to occur on any particular day. *Id.* (citing § 2000e-5(e)(1)). It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its

own. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295. Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," it does not matter that some of the component acts fall outside the statutory time period. *Morgan*, 536 U.S. at 103. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Id.*

To support his hostile-work-environment and racial-discrimination claims, Plaintiff presented evidence that co-workers and supervisors made racial jokes, used racial epithets, and performed threatening race-based acts. Doc. 1 at 4–6. Although some of these acts may have occurred prior to May 6, 2012, it cannot be said that they are not part of the same actionable hostile-work-environment claim. Thus, the Court concludes that Plaintiff's hostile-work-environment claim under § 1981 is not time-barred.

"With claims of either constructive discharge or actual discharge, the standard rule thus yields the same result: a limitations period should not begin to run until after the discharge itself." *Green v. Brennan*, 136 S. Ct. 1769, 1777, 195 L. Ed. 2d. 44 (2016). Therefore, as to Plaintiff's constructive-discharge claim, the statute of limitations did not begin to run until June 29, 2012, and the claim is not time-barred.

Under the Rule 12(b)(6) standard, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleading stage, the plaintiff must normally plead [himself] out of court." *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. 1 April 28, 1999) (citing *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (holding that "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis")). Plaintiff has not done so here.

Plaintiff's Complaint alleges that he was subjected to racial discrimination, harassment, and a hostile work environment during his employment with Defendants beginning in February 2012 and ending with his constructive discharge on or about June 29, 2012. While Plaintiff's claims may involve or relate to acts that occurred prior to May 6, 2012, they are not time-barred. Therefore, Defendants' Motion to Dismiss Plaintiff's § 1981 claims relating to pre-May 6, 2012, conduct must be denied.

**Conclusion**

Accordingly, the Court hereby

**ORDERS** that the Defendants' Motion to Dismiss (Doc. 24) is **DENIED**.

SIGNED at Houston, Texas, this 30th day of March, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE