UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SENECA JONES, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:16-CV-01282 |
| § | |
| TUBAL-CAIN HYDRAULIC SOLUTIONS, § | |
| INC., *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced cause is Defendants Tubal-Cain Hydraulic Solutions, Inc. ("TCHS"), Tubal-Cain Industries, Inc. ("TCI"), Tubal-Cain Holdings, LLC ("TC Holdings"), Tubal-Cain Marine Services, Inc. ("TC Marine Services"), Tubal-Cain Industrial Services, Inc. ("TC Industrial Services"), Tubal-Cain Gas Free Services, Inc. ("TC Gas Free Services"), Tubal-Cain Rentals, Inc. ("TC Rentals"), Tubal-Cain Marine Services-Devall Fleet, Inc. ("TC Marine-Devall"), and Tubal-Cain Gas Fee Services-Devall Fleet, Inc. ("TC Gas Free-Devall") (collectively, "Defendants") Motion to Strike Jury Demand, Doc. 30, filed on October 14, 2016. Plaintiff, Seneca Jones ("Jones"), filed his Response to Defendants' Motion on November 4, 2016. Doc. 32. Defendants filed their Reply on November 11, 2016. Doc. 33. After considering the Motion, Response, Reply, relevant law, and for the reasons discussed below, the Court grants Defendants Motion.

**I. Background**

Defendant TCHS hired Jones on February 6, 2012. Doc. 32-1. On the same day, Jones was presented with the "Hydraulic Solutions Inc. New Hire Packet" (the "New Hire Packet"). *See* Doc. 30-2 at 2–19. Within the New Hire Packet, there was a seven-page agreement outlining

the alternative dispute resolution and arbitration procedure for disputes between employees and TCHS (the "Agreement"). Doc. 30-2 at 13–19. Importantly, the Agreement contained a clause that read, in bold: "**I acknowledge and understand that by signing this Agreement, I am giving up the right to a jury trial on all claims covered by this Agreement.**" Doc. 30-2 at 14. The issue raised by the present Motion is whether the Jones waived his right to a jury trial when he signed the Agreement containing this language.

## II. Legal Standard

The Seventh Amendment of the Constitution preserves the common law right to a jury trial in civil suits. U.S. Const. Amend. VII. However, like other constitutional rights, the right may be waived by prior written agreement of the parties. *Commodity Futures Trading Comm. v. Schor*, 478 U.S. 833, 848 (1986). Such written agreements to waive the right to jury trial are generally enforceable against parties who bring suit, as long as the waiver was made knowingly, voluntarily, and intelligently. *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970) (discussing waiver in the criminal context); *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998) (discussing waiver in the civil context). In determining whether a jury-trial waiver was made knowingly, voluntarily, and intelligently, courts in the Fifth Circuit balance four factors: (1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver.[1] *Seven Seas Petroleum, Inc. v. CIBC World Markets Corp.*, No. 4:08-

---

[1] Some courts in the Fifth Circuit use a five-factor test that asks whether the party was represented by counsel. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, No. H-10-1358, 2012 WL 201533, at *3 (S.D. Tex. Jan. 23, 2012), *aff'd*, 548 F. App'x 205 (5th Cir. 2013); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 707 (E.D. La. 1999) (citation omitted). Admittedly, this fifth factor does address whether the jury waiver

3048, 2012 WL 175415, at *2 (S.D. Tex. Jan. 20, 2012) (citations omitted).

Circuits are split on the issue of which party in a jury trial waiver dispute bears the burden of showing the knowingness and voluntariness of a waiver. *Compare Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) (placing the burden on the party seeking enforcement), *and Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (same), *with K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985) (placing the burden on the party seeking to void the waiver). Although the Fifth Circuit has yet to decide the issue, several of our sister district courts recognize that the majority of federal courts place the burden on the party seeking waiver and have followed suit. *See, e.g.*, *Zavala v. Aaron's, Inc.*, 4:15-CV-123, 2015 WL 5604766, at *1 (E.D. Tex. Sept. 23, 2015) (stating that Fifth Circuit has yet to weigh in); *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002) (same). This Court joins their ranks.

### III. Analysis

#### A. Negotiability of the contract

Defendants argue that whether a contract was actually negotiated is inapposite to the question of negotiability. Defendants contend that Jones had an opportunity to negotiate the Agreement but chose not to do so. Doc. 30 at 8. Defendants also urge that because the jury waiver applied to both parties, it was bilateral, which indicates the Agreement was negotiable. *Id.* Jones responds that there was no discussion, explanation, or negotiation of the contract, and that he felt he was unable to negotiate the contract because he was required to sign the forms in order to initiate his employment. Doc. 32 at 10.

---

was executed knowingly and intelligently. Nevertheless, such an inquiry appears to fit naturally within the broad third and fourth factors (disparity of bargaining power and business acumen). Accordingly, the Court does not treat legal representation as an additional factor.

In assessing the negotiability of a contract, courts ask whether there was actual negotiation over contract terms. *Zavala*, 2015 WL 5604766, at *3 (citing *Morgan Guar. Tr. Co. v. Crane*, 36 F. Supp. 2d 602, 604 (S.D.N.Y. 1999)). However, lack of actual negotiations does not necessarily mean the contract was not negotiable. *Id.* (citing *Morgan*, 36 F. Supp. 2d at 604). Rather, the question is whether there was an opportunity for negotiation. *See id.* One factor that courts consider in determining negotiability is whether the waiver is unilateral or bilateral. *Powell*, 191 F. Supp. 2d at 814.

In this case, it does not appear the parties engaged in any actual negotiation of the Agreement. Thus, the Court turns to the language of the waiver provision to determine whether it was unilateral or bilateral. Jones contends because the Agreement uses first person, it only applies to him. For example, following the waiver language, the Agreement reads: "I understand that I have the option to resign my employment and seek employment elsewhere if I do not wish to enter into this Agreement." Doc. 30-2 at 14. What Jones fails to mention, however, is that the very next paragraph states:

> [TCHS] has also agreed and bound itself to resolve all complaints and claims against me which are covered by this Agreement through binding arbitration. This Agreement to resolve claims by arbitration is mutually binding upon both me and [TCHS]. . . I understand that the purpose of this Agreement is to provide both [TCHS] and myself a way in which all covered claims or disputes may be resolved by binding arbitration, rather than litigation.

*Id.* The meaning of this language is clear—TCHS was also bound to arbitrate rather than litigate, meaning that it too was forfeiting its right to a jury trial on "all complaints and claims" that were covered by the Agreement. In light of the foregoing, the Court concludes that the provision was bilateral and the first factor weighs in favor of waiver.

B. **Conspicuousness**

In arguing that the waiver was conspicuous, Defendants point to the bold lettering of the

waiver provision, the simple language employed, and the fact that the last page of the Agreement, immediately before the signature line, contained a reminder in all-caps, bold lettering stating that "**I UNDERSTAND THAT THIS AGREEMENT RESTRICTS MY RIGHT TO SUE MY EMPLOYER.**" Doc. 30 at 8–9. Jones responds by arguing that the waiver language was buried in the last seven pages of the 18-page New Hire Packet and that the use of bold print is inapposite because several other "inconsequential matters" were highlighted in bold font. Doc. 32 at 12–13. Jones also argues that the use of the same size and style of font in the waiver provision as in the rest of the document made the provision inconspicuous. *Id.* at 12.

In determining the conspicuousness of a contract provision, courts ask whether the provision was in bold-face or conspicuous type. *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 708 (E.D. La. 1999) (citation omitted). Also relevant is how far in the document the provision is from the signature page, *In re Reggie Packing Co., Inc.*, 671 F. Supp. 571, 574 (N.D. Ill. 1987), and how many pages are in the document, *Leasing Serv. Corp.*, 804 F.2d at 833.

Here, the waiver language in the Agreement is in bold-face type and is the only bold-face text on the page. *See* Doc. 30-2 at 14. Moreover, contrary to Jones's contention otherwise, the waiver language was not buried but is at the beginning of the second full paragraph on the second page of the Agreement. *See id.* Moreover, the reminder language was included in bold, all-caps lettering right before the signature line. *See id.* at 19. Thus, the second factor also points toward waiver.

### C. Disparity of Bargaining Power

Defendants argue that the third factor also weighs in their favor because there was no gross disparity in the parties' bargaining positions. Doc. 30 at 6. Jones responds by arguing that

his lack of secondary education and business acumen compared to the fact that Defendants are "a sophisticated conglomeration of corporate and business entities" indicates gross disparity. Doc. 32 at 9–10. He also relies on the fact that Defendants "have utilized legal representation, including in the drafting of these documents" to support his argument. *Id.*

Inequality in the bargaining power between the parties can be the basis for invalidating a waiver provision. *Zavala*, 2015 WL 5604766, at *3. However, the inherent disparity in bargaining relationships that is the consequence of normal employer-employee relations does not automatically render a waiver involuntary. *Id.* (citing *Westside–Marrero*, 56 F. Supp. 2d at 707, 709). Rather, "the bargaining differential must be the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional situations." *Westside–Marrero*, 56 F. Supp. 2d at 709.

Here, Jones has not pled any facts to suggest that his situation was extreme or exceptional. For example, Jones has not alleged that TCHS is the only business in his area that could employ someone with his skillset, which would indicate a disparity more severe than the kind common to employment contracts generally. *See* Restatement (Second) of Torts § 496B (1965) ("[A] disparity in bargaining power may arise from the defendant's monopoly of a particular field of service, [and] . . . the plaintiff has no alternative possibility of obtaining the service without the clause."). Nor, as Defendants point out, did Jones allege that his personal circumstances were dire, he was under duress, or had no other option than to accept the job on the terms TCHS offered. Accordingly, this factor also points toward enforcement of the waiver.

### D. Business Acumen and Professional Experience

Defendants argue that the fourth factor weighs in their favor because Jones is not unsophisticated. Doc. 30 at 8. Indeed, Defendants point out that Jones was hired as a Hydraulic

Technician/Mechanic, "a position requiring a certain degree of sophistication." *Id.* Jones responds by pointing out that he did not finish high school, has no college education, has always worked manual labor jobs, and "has no training, work experience, or education regarding legal or business matters." Doc. 32 at 9. In support of his argument that he did not understand what he was signing, Jones also points to the fact that he signed on the wrong line in six places in the New Hire Packet. *Id.* at 10.

Defendants urge that allowing Jones to escape the waiver because he signed the wrong line and did not understand the contract would incentivize employees not to read or understand basic employment agreements and to sign on the wrong lines. Doc. 33 at 6. Defendants further argue that the waiver of jury trial could not have been stated more simply. *Id.*

In assessing the plaintiff's business acumen and professional experience, courts may look to the employee's education and work experience. *See, e.g.*, *Montalvo v. Aerotek, Inc.*, No. 5:13-CV-997-DAE, 2014 WL 6680421, at *15 (W.D. Tex. Nov. 25, 2014) ("Montalvo attended college and had sufficient business acumen to serve as an employee with Aerotek for fifteen years."); *Westside-Marrero*, 56 F. Supp. 2d at 708 ("The Stubbses were, however, experienced businesspeople who had entered into contracts before and can be presumed to understand the importance of reading contracts before signing them."). "A party has sufficient business acumen if [he is] able to understand the import of a jury waiver provision." *Zavala*, 2015 WL 5604766, at *2 (citing *Pellerin Const., Inc. v. Witco Corp.*, No. 00-0465, 2001 WL 258056 at *2 (E.D. La. Mar. 14, 2001)). "An understanding of the clear and unambiguous language of the jury waiver requires no extraordinary level of sophistication." *Id.* (citing *G & C Const., LLC v. Kiewit La. Co.*, No. CIV.A. 11–2566, 2012 WL 601887 at *3 (E.D. La. Feb. 23, 2012)).

In this case, while there is nothing in Jones's background that would indicate he was

uniquely qualified to understand the import of the jury-waiver provision, the language employed is unambiguous. Regardless of one's educational or professional background, the import is clear: the signer is "giving up the right to a jury trial on all claims covered by this Agreement." Doc. 30-2 at 14. Accordingly, the Court finds that this factor also weighs in favor of waiver.

**IV. Conclusion**

For the forgoing reasons, the Court hereby

**ORDERS** that Defendant's Motion to Strike Jury Demand, Doc. 30, is **GRANTED**.

SIGNED at Houston, Texas, this 5th day of September, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE